**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

DEVERICK SCOTT,                                                                                             PLAINTIFF
ADC #131042

v.                                    5:15CV00194-JM-JTK

RANDY WATSON, et al.                                                        DEFENDANTS

**PROPOSED FINDINGS AND RECOMMENDATIONS**

**INSTRUCTIONS**

The following recommended disposition has been sent to United States District Judge James M. Moody, Jr. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.     Why the record made before the Magistrate Judge is inadequate.

2.     Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.     The detail of any testimony desired to be introduced at the hearing before the District

Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

>Clerk, United States District Court
>Eastern District of Arkansas
>600 West Capitol Avenue, Suite A149
>Little Rock, AR 72201-3325

## DISPOSITION

**I.     Introduction**

Plaintiff Scott is a state inmate incarcerated at the Varner Unit of the Arkansas Department of Correction (ADC). He filed this pro se action pursuant to 42 U.S.C. § 1983, alleging excessive force, failure to protect, and retaliation, in connection with two incidents which occurred in October and November, 2014 (Doc. No. 2). Defendants Wilson and Powell were dismissed on February 22, 2016 (Doc. No. 66).

This matter is before the Court on the Motion for Summary Judgment, Brief in Support, and Statement of Facts, filed by remaining Defendants Bivens, Butler, Cofield, Esaw, Hicks, Jackson, Jones, Malone, Paskel, Stephens, Watson, Woolfolk, and Young. (Doc. Nos. 113-115). Plaintiff filed a Response to the Motion and Brief in Support (Doc. Nos. 120, 121). Defendants filed a Reply (Doc. No. 123).

**II.    Summary Judgment Motion**

Pursuant to FED.R.CIV.P. 56(a), summary judgment is appropriate if the record shows that

there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997). "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other citations omitted)). "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'" Id. at 1135.  Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." Id.

    **A.**    **Exhaustion**

Defendants first ask the Court to dismiss Watson and Jones, based on Plaintiff's failure to exhaust administrative remedies, as required by the Prison Litigation Reform Act (PLRA) and the ADC grievance policy, Administrative Directive (AD) 14-16 (Doc. No. 113-2).  According to the Declaration of Barbara Williams, inmate grievance supervisor for the ADC, the ADC grievance policy requires that an inmate "write a brief statement that is specific as to the substance of the issue or complaint to include the date, place, personnel involved or witnesses, and how the policy or incident affected the inmate submitting the form." (Doc. No. 113-1, p. 2) The policy also instructs inmates that failure to abide by the policy requirements, including specifically naming each individual involved in the incident at issue, will result in the dismissal of a lawsuit for failure to

exhaust administrative remedies. (Id.) Ms. Williams explained the grievance procedure as a three-step process, beginning with the filing of an informal resolution form, a formal grievance, and an appeal to the appropriate deputy director. (Id., pp. 2-3) Ms. Williams reviewed Plaintiff's grievance history and found that Plaintiff filed and fully exhausted his remedies during the time frame at issue against all Defendants except Defendants Watson and Jones. (Id., pp. 4-5) Although Plaintiff filed a grievance naming Watson, VSM 14-4032, it was rejected as a duplicate of a prior grievance Plaintiff filed, which did not name Watson. (Id., p. 5) In addition, Plaintiff filed one grievance naming Defendant Jones, VSM 14-4031, which was rejected on appeal as untimely and not fully exhausted. (Id., p. 6)  Based on this grievance history, Defendants ask the Court to dismiss Plaintiff's claims against Watson and Jones, citing Jones v. Bock, 549 U.S. 199, 219 (2007).

In his Response, Plaintiff refers to the two grievances he filed against Defendants Watson and Jones, and states that a genuine issue of fact exists concerning whether he properly exhausted his administrative remedies as to them.

According to the PLRA,

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a), unconst'l on other grounds, Siggers-El v. Barlow, 433 F.Supp.2d 811, 813 (E.D. Mich. 2006).  The courts have interpreted this provision as a mandatory requirement that administrative remedies be exhausted prior to the filing of a lawsuit.  In Booth v. Churner, the United States Supreme Court held that in enacting the PLRA, "Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures." 532 U.S. 731, 741 (2001). In addition, the United States Court of Appeals for the Eighth Circuit held in Chelette

v. Harris, "[t]he statute's requirements are clear: If administrative remedies are available, the prisoner must exhaust them. Chelette failed to do so, and so his complaint must be dismissed, for 'we are not free to engraft upon the statute an exception that Congress did not place there.'" 229 F.3d 684, 688 (8th Cir. 2000) (quoting Castano v. Nebraska Dep't of Corrections, 201 F.3d 1023, 1025 (8th Cir. 2000)). In Johnson v. Jones, the Court held that "[u]nder the plain language of section 1997e(a), an inmate must exhaust administrative remedies *before* filing suit in federal court....If exhaustion was not completed at the time of filing, dismissal is mandatory." 340 F.3d 624, 627 (8th Cir. 2003) (emphasis in original). Finally, in Jones v. Bock, the United States Supreme Court held that while the PLRA itself does not require that all defendants be specifically named in an administrative grievance, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." 549 U.S. at 218 (2007).

In Burns v. Eaton, the Eighth Circuit held that an exhausted grievance which named one officer involved in a pepper spray incident did not cover the plaintiff's allegations against a second officer named in his complaint, when the grievance did not name the second officer and did not include a description of his allegedly-unlawful actions. The Court stated, "this was not a case where 'prison officials decline[d] to enforce their own procedural requirements and opt[ed] to consider otherwise-defaulted claims on the merits.'" 752 F.2d 1136, 1141 (quoting Reed-Bey v. Pramstaller, 603 F.3d 322, 325 (6th Cir. 2010)).

Having reviewed the grievances at issue (Doc. Nos. 113-13, 113-14), the Court finds that Plaintiff did not fully exhaust the grievance in which he named Defendant Jones, because it was rejected on appeal, and Plaintiff provides no evidence that he appealed this rejection. (Doc. No. 121, p. 55) With respect to the second grievance, however, (VSM 14-4032), the Court finds that although

it was rejected as a duplicate, Plaintiff clearly noted in his appeal that it differed from the prior grievance because in 14-4031 he complained about Defendant Paskel's conduct, but in 14-4032 he complained about the failure to supervise by Watson, Jackson, Malone, and Stevenson. (Doc. No. 113-3, p. 2) In this case, Plaintiff provides evidence that he appealed, but that his appeal also was rejected as duplicative. (Id., p. 3) The Court finds that Plaintiff completed all steps in an attempt to exhaust the grievance process as to Defendant Watson, and that prison officials' failure to address the issue raised in 14-4032 should not be used to prevent Plaintiff from litigating this claim against him in this case. See Ross v. Blake, where the United States Supreme Court held that an administrative procedure is rendered unavailable to an inmate when "it operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates." 136 S.Ct. 1850, 1859 (2016).

    **B.**    **Sovereign Immunity**

The Court agrees with Defendants that Plaintiff's monetary claims against them in their official capacities should be dismissed, pursuant to sovereign immunity. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 64 (1989).

    **C.**    **Qualified Immunity - Excessive Force/Failure to Protect**

The remaining Defendants ask the Court to dismiss Plaintiff's claims against them based on qualified immunity, which protects officials who act in an objectively reasonable manner. It may shield a government official from liability when his or her conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity is a question of law, not a question of fact. McClendon v. Story County Sheriff's Office, 403 F.3d 510, 515 (8th Cir. 2005).

Thus, issues concerning qualified immunity are appropriately resolved on summary judgment. See Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (the privilege is "an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.").

To determine whether defendants are entitled to qualified immunity, the courts generally consider two questions: (1) whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful. Pearson v. Callahan, 555 U.S. 223, 232 (2009).[1] Defendants are entitled to qualified immunity only if no reasonable fact finder could answer both questions in the affirmative. Nelson v. Correctional Medical Services, 583 F.3d 522, 528 (8th Cir. 2009).

### 1. October 22, 2014 Incident

According to Plaintiff's Complaint, on October 22, 2014, Defendants Paskel and Woolfolk used excessive force against him in an effort to remove him from a yard call cell. Plaintiff claims that officers took him to yard call and put him in one of the cages, but that Paskel ordered that he be placed in a different cage because they did not have the key to lock the cage. During this time, Plaintiff was handcuffed and shackled, but when the officers tried to remove him, he grabbed the gate to the cage and refused to move. Plaintiff claims he peacefully protested his removal and requested that the officers call Defendant Malone to come down and use her key to lock the cell.

---

[1] Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Nelson, 583 F.3d at 528 (quoting Pearson v. Callahan, 555 U.S. at 236).

However, Defendants Paskel and Woolfolk grabbed him by the shoulders, choked him, and pulled him in an effort to remove him from the cell. When the officers were able to remove Plaintiff's hands from the gate, he dropped his weight and the Defendants then picked him up and grabbed him. Plaintiff again grabbed the gate and refused to move. He claims that the incident caused him to strain his chest muscles.

Defendants Paskel and Woolfolk state that Plaintiff cannot provide evidence that they acted in bad faith or maliciously and sadistically, which are all necessary to support a finding of a constitutional violation for excessive force. Estate of Davis v. Delo, 115 F.3d 1388, 1394 (8th Cir. 1997). According to the disciplinary charge filed against Plaintiff as a result of the incident:

> [Plaintiff] refused to go into a cell on the yard stating "I aint going in that yard cage." Inmate Scott was given several direct orders to go into that yard cage or back to his cell by COII Paskel but to no avail. Inmate Scott then tried to fall down to the ground intentionally. Corporal Paskel along with Corporal Wilson held unto Inmate Scott to prevent him from harming himself. Corporal Paskel radioed Sgt. Thomas for assistance Sgt. Thomas carried and escorted Inmate Scott to his cell....

(Doc. No. 113-21, p. 1) Defendants also note that in his deposition, Plaintiff admitted that he held onto the gate when he was told to move, was aware of Paskel's authority to order him to move, refused to follow the instructions given him, resisted the efforts of the officers and continued to hold onto the gate, and finally, refused to walk and dropped his weight on the ground and grabbed the fence a second time. (Doc. No. 113-15)

In his Response, Plaintiff complains about the amount of force used by Defendants and states that to prevail in this action he does not need to prove that he suffered a serious injury. He states that Defendants Paskel and Woolfolk did not act in good faith, and could have resolved the issue peacefully by calling the supervisor, as Plaintiff had requested.

To support a claim of excessive force, Plaintiff must allege and prove that force was not

applied in a good-faith effort to maintain or restore discipline, but rather, maliciously and sadistically to cause harm. Wilkins v. Gaddy, 559 U.S. 34, 37 (2010). While the absence of serious injury to the Plaintiff is relevant, it is but one factor to consider in determining "whether the use of force could plausibly have been thought necessary," and might also indicate the amount of force applied. Id. (quoting Whitley v. Albers, 475 U.S. 312, 321 (1986)). Finally, "an inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim. Id. at 38 (quoting Hudson v. McMillian, 503 U.S. 1, 9 (1992)).

Although there is a dispute of fact concerning the amount of force used by the Defendants when attempting to remove Plaintiff from the cell, Plaintiff provides no facts or evidence to support a finding that Defendants acted with malicious and sadistic intent to cause harm. In his deposition testimony, Plaintiff admitted that when Paskel ordered him to move out of the cage, he "stood on the gate and held onto the gate...I said, 'I ain't going nowhere.'" (Doc. No. 113-15, p. 9) Plaintiff continued to state that he gripped the gate with force, that he knew Paskel had the authority to order him to leave the gate, that he refused Paskel's order, and that the Defendants' actions in grabbing him were in an effort to get him off of the gate of the cell. (Id., pp.10-16) He further stated that Defendants dragged him around the cage "and then right here where I dropped my weight on the ground, and this is where I locked on to a gate again...I fell down like a flop. I flopped down and locked on to the gate right there to get the supervisor out there." (Id., pp. 17-18) Finally, Plaintiff admitted that he refused to move from the cell, held onto the gate, and refused every effort of the officers to move him. (Id., p. 20)

Based on all the evidence, the Court finds that no reasonable fact finder could find that the facts alleged or shown, construed in the light most favorable to Plaintiff, established a violation of

a constitutional or statutory right. Therefore, the Court finds as a matter of law that Plaintiff's excessive force allegations against Defendants Paskel and Woolfolk should be dismissed.

### 2.     November 11, 2014 Incident

Plaintiff alleges that Defendant Cofield improperly accused him of flooding his cell on November 11, 2014, based on what Cofield heard (but did not see) occurring in Plaintiff's cell. Several hours after officers cleaned up Plaintiff's cell, they returned to place him on behavior control, because of Cofield's allegation that Plaintiff was responsible for the flooding. At that time, Plaintiff refused their instructions to be cuffed, and asked that a supervisor be called to talk with him. However, Defendant Esaw arrived and sprayed Plaintiff with a can of mace, after which Plaintiff was taken to the showers and examined by medical personnel prior to his placement in behavioral control. Plaintiff alleged in his Complaint that Defendants Young, Stephens, Cofield, and Hicks failed to protect him from the attack by Defendant Esaw.

Defendants again state that they are entitled to qualified immunity, based on Plaintiff's failure to show that they acted in bad faith, or with malicious and sadistic intent. They again rely on Plaintiff's deposition testimony, where he admitted that he refused orders from officers to catch the cuffs, and further admitted that none of the officers could have intervened in time to prevent Defendant Esaw from spraying him. Based on this admission, Defendants also ask the Court to dismiss the failure to protect allegations against Hicks, Young, Malone, Stephens, Bivens, and Cofield.

Plaintiff responds that Defendant Esaw acted unreasonably by spraying him with a full can of mace without giving him a direct order or warning him ahead of time, as required by ADC policy. Again, he also complains that the amount of force was unnecessary, especially since the Defendants

could have diffused the situation by honoring his request to call the supervisor to speak with him.

Initially, the Court finds, based on Plaintiff's deposition testimony, that his failure to protect allegations associated with this incident should be dismissed. At first, Plaintiff stated that the only officers present who failed to protect him were Young and Cofield. (Doc. No. 113-15, p.22) He also stated that the only involvement of Defendant Hicks was that she was present in the control booth at the time he reported the flooding of the cell, and was not involved in the pepper-spraying incident. (Id., pp. 23, 38) He then later admitted that he did not have a failure to protect claim against anyone stemming from the pepper-spraying incident, because no one could have stopped Defendant Esaw. (Id., p. 40)

With respect to the excessive force claim against Esaw, the Court again finds no evidence of malicious or sadistic behavior. In his deposition testimony, Plaintiff complained that Defendant Cofield never saw him flood his cell, and that the accusation was retaliatory based on a grievance Plaintiff filed against him in August, 2014. (Doc. No. 113-13, pp. 22, 24-26) He also complained that Defendants waited several hours between the time of the incident and the time they came to his cell to place him in behavior control, stating that at that point his behavior was no longer a problem. (Id., p. 26) Plaintiff admitted, however, that behavior control is used when inmates flood their cells. (Id., pp. 28, 29) And most importantly, Plaintiff admitted that he refused the officers' orders to submit to the cuffs, based on his argument that Defendant Cofield did not see him flood the cell. (Id., pp. 31-33) After several verbal attempts to obtain his compliance, Defendant Esaw sprayed him, the officers immediately took him to the shower, and medical staff examined him for any issues. (Id., p. 34) Based on Plaintiff's version of the events, the Court finds no evidence of malice on the part of Defendant Esaw. Plaintiff was being recalcitrant in refusing to obey the officers' orders, and he

had a history of such behavior. (He admitted flooding his cell in August, 2014, and then later in November, 2014. Doc. No. 113-15, pp. 25, 44) Esaw's application of mace was immediately followed by a shower and medical check-up, and Plaintiff suffered no more than irritation to his skin. (Doc. No. 113-15, p. 35) Therefore, the Court finds that no reasonable fact finder could find that the facts alleged or shown, construed in the light most favorable to Plaintiff, established a violation of a constitutional or statutory right.

**D.     Retaliation**

Plaintiff alleges that most of the complained-of actions in this case were motivated by retaliation against him for the filing of grievances and lawsuits. Defendants argue that Plaintiff fails to provide sufficient facts to support a retaliation claim, noting Plaintiff must show he was engaged in a protected activity, that Defendants retaliated against him for that, and that the retaliation consisted of an adverse action which would chill a person of ordinary firmness from engaging in that protected activity. Zutz v. Nelson, 601 F.3d 842, 848-49, 2010 WL 1489350 (8th Cir. 2010). Defendants state Plaintiff includes no plausible allegations against them and provides no facts to support his claims, other than that he had previously filed grievances against the Defendants.

In Response, Plaintiff complains that prior to the October 22, 2014 incident, Defendants Paskel, Butler, Cofield, and Woolfolk retaliated against him by taking away his yard call because of grievances Plaintiff had filed. He refers to an incident which occurred on October 9, 2014, where Paskel allegedly said that Plaintiff was not on the list for yard call. He also claims that three occurrences on November 11, 2014 were retaliatory: Cofield's allegation that Plaintiff had flooded his cell, Esaw's action in spraying Plaintiff with mace, and Plaintiff's placement on behavioral control. Finally, he claims that the disciplinary charge he received on November 11, 2014 from

Defendants Paskel and Cofield was based on retaliation for the filing of grievances.

In order to support a retaliation claim against Defendants, Plaintiff must allege and prove "that he engaged in protected activity and that defendants, to retaliate for the protected activity, took adverse action against [him] that would chill a person of ordinary firmness from engaging in that activity." Lewis v. Jacks, 486 F.3d 1025, 1028 (8th Cir. 2007). "The filing of a prison grievance, like the filing of an inmate lawsuit, is protected First Amendment activity." Id. To avoid summary judgment, however, Plaintiff must submit "affirmative evidence [of] a retaliatory motive." Id., (quoting Wilson v. Northcutt, 441 F.3d 586, 592 (8th Cir. 2006)). With respect to the majority of Plaintiff's retaliation allegations, the Court finds that he does not establish a causal connection between the protected activities and the alleged retaliation. Many of the grievances which he claims motivated Defendants' actions were filed several weeks or months prior to the alleged retaliation. In addition, he provides no specific facts to support the retaliation claims. Flittie v. Solem, 827 F.2d 276, 281 (8th Cir. 1987).

A retaliatory disciplinary claim is precluded, however, if the alleged retaliatory conduct violation was issued for the actual violation of a prison rule, by the showing of "some evidence" that the inmate actually committed a rule violation. Hartsfield v. Nichols, 511 F.3d 826, 829 (8th Cir. 2008). And, "a report from a correctional officer, even if disputed by the inmate and supported by no other evidence, legally suffices as 'some evidence' upon which to base a prison disciplinary violation, if the violation is found by an impartial decision maker." Id. at 831. See also Sanders v. Hobbs, 773 F.3d 186, 190 (8th Cir. 2014). In this case, Plaintiff alleges that the November 11, 2014 disciplinary charge was retaliatory. However, the violation report noted that, "Staff observed inmate Scott flooding his cell in Isolation cell #4004 by continuously flushing his toilet and was insolent

13

to staff by stating I am going to get some work out of your ass today." (Doc. No. 113-22, p. 3) The evidence relied upon was the report from staff, the statement of the charging officer, and witness statements. Therefore, Plaintiff's allegation of a retaliatory disciplinary is precluded by the evidence supporting his conviction.

Based on all the above and on Plaintiff's failure to provide specific facts which connect his alleged protected activity to the allegedly retaliatory actions of the Defendants, the Court finds that no reasonable fact finder could conclude that Defendants' actions violated Plaintiff's constitutional rights.

      **E.**      **Respondeat Superior**

Defendants state that Plaintiff's claims against Watson, Malone, Stephens, and Jackson are based solely on their positions of authority within the prison, and therefore should be dismissed. They state Plaintiff admitted in his deposition that he intended to sue them based on their supervisory roles, and failed to provide a causal link or direct responsibility by any of them with respect to any of the incidents which occurred, citing Madewell v. Roberts, 909 F.2d 1203, 1208 (8th Cir. 1990). Plaintiff responded by stating that although he complained of Defendants' retaliatory actions in grievances, Defendants Watson and Jackson failed to take any action to stop the retaliation.

Supervisor liability is limited in § 1983 actions, and a supervisor can not be held liable on a theory of respondeat superior for his or her employee's allegedly unconstitutional actions. See White v. Holmes, 21 F.3d 277, 280 (8th Cir. 1994). A supervisor incurs liability only when personally involved in the constitutional violation or when the corrective inaction constitutes deliberate indifference toward the violation. Choate v. Lockhart, 7 F.3d 1370, 1376 (8th Cir. 1993).

In particular, the plaintiff must show that the supervisor knew about the conduct and facilitated it, approved it, condoned it, or turned a blind eye to it. Boyd v. Knox, 47 F.3d 966, 968 (8th Cir. 1995). See also Otey v. Marshall, 121 F.3d 1150, 1155 (8th Cir. 1997) ("Section 1983 liability cannot attach to a supervisor merely because a subordinate violated someone's constitutional rights.")

Plaintiff admitted in his deposition that he sued Watson, Jackson, Stephens and Malone based on their supervisory duties. (Doc. No. 113-15, p. 47) He also claimed they failed to properly train and supervise the other Defendants who were involved in the October and November, 2014, incidents. (Id., p. 48) Since this Court previously found no evidence to support retaliation claims, his allegations that they failed to prevent retaliation also do not support claims against these supervisors. In addition, he provides no specific evidence, other than his grievances, to show that these Defendants were personally involved in constitutional violations against him or knew about such behavior and permitted it to occur. Therefore, Plaintiff's allegations against these Defendants, based on their supervisory positions, also should be dismissed.

### F.    ADC Policies

As noted by Defendants, Plaintiff's numerous allegations of violations of ADC policies fail to support constitutional claims for relief. "[T]he mere violation of a state law or rule does not constitute a federal due process violation." Williams v. Nix, 1 F.3d 712, 717 (8th Cir. 1992).

### G.    Behavioral Control

In his Complaint, Plaintiff alleges that he was placed on 72-hour behavioral control on November 11, 2014, with only a pair of boxers, and no sheets, socks or jumpsuit. He alleges he froze for two days and was not able to sleep. On November 13, 2014, after he fell asleep, an officer turned on the lights before 7 a.m. in order to conduct a count. Plaintiff became upset after about five minutes, and flooded his cell. Even though he had not yet completed his 72-hour behavioral control,

he was placed on another 72-hour behavioral control without any due process, and his shower shoes were taken away from him.

Defendants note that Plaintiff admitted in his deposition testimony that behavior control was an appropriate measure when inmates flood their cells. (Doc. No. 113-15, p. 28) In addition, they state that placement on behavior control does not implicate a liberty interest unless the punishment results in an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," quoting <u>Sandin v. Conner</u>, 515 U.S. 472, 484 (1995). Defendants state Plaintiff's assignment for five days was not atypical or significant, and that Plaintiff's main complaint about his assignment is that it occurred three hours after he was initially accused of flooding his cell.

In <u>Sandin v. Conner</u>, the Court held that inmates do not possess a due process liberty interest in freedom from administrative or punitive segregation. 515 U.S. at 484. Recognizing, however, that states may themselves create certain protected liberty interests, the Court noted that those would be "limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause...imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." <u>Id</u>. Following <u>Sandin</u>, the United States Court of Appeals for the Eighth Circuit Court held that an inmate's demotion from administrative segregation to punitive isolation was "not the sort of deprivation that qualifies as 'atypical and significant.'" <u>Kennedy v. Blankenship</u>, 100 F.3d 640, 642 (1996). The Court did not consider Kennedy's placement in punitive isolation as an atypical and significant event, even though the prisoner faced restrictions in privileges regarding mail, telephone, visitation, commissary, and personal possessions.

In addition, although "[t]he Constitution 'does not mandate comfortable prisons,'" humane

conditions of confinement include "adequate food, clothing, shelter, and medical care." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Rhodes v. Chapman, 452 U.S. 337, 349 (1981)). In order to support an Eighth Amendment violation against Defendants, Plaintiff must allege and prove the existence of objectively harsh conditions of confinement, together with a subjectively culpable state of mind by Defendants in condoning or creating the conditions. Choate v. Lockhart, 7 F.3d 1370, 1373 (8th Cir. 1993). The "defendant's conduct must objectively rise to the level of a constitutional violation ... by depriving the plaintiff of the 'minimal civilized measure of life's necessities.'.... The defendant's conduct must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner." Revels v. Vincenz, 382 F.3d 870, 875 (8th Cir. 2004) (quoting Rhodes v. Chapman, 452 U.S. at 342, and Estelle v. Gamble, 429 U.S. 97, 104 (1977)). "To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety...." Wilson v. Seiter, 501 U.S. 294, 298-9 (1991) (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)). Furthermore, "'discomfort compelled by conditions of confinement, without more, does not violate the amendment.'" Smith v. Coughlin, 748 F.2d 783, 787 (2d Cir. 1984) (quoting Jackson v. Meachum, 699 F.2d 578, 581 (1st Cir. 1983)).

In O'Leary v. Iowa State Men's Reformatory, the court found no Eighth Amendment violation where an inmate spent several days in a cell without underwear, blankets, mattress, exercise or visits. 79 F.3d 82, 823-84 (8th Cir. 1996). Similarly, the court in Williams v. Delo found no constitutional violation where an inmate spent four days without clothes, mattress, water, bedding, legal mail or hygienic supplies. 49 F.3d 442, 444 (8th Cir. 1995). In this case, Plaintiff alleged that he spent five days on behavior control with no hygiene to wash his hands, no socks,

sheets, or jumpsuit, and that he froze to death in 30 degree weather. (Doc. No. 2, p. 29)  In his deposition testimony, Plaintiff stated that it was about 30 degrees outside, but added that he did not have a separate issue about being housed in a cold cell.  (Doc. No. 113-15, pp. 42-43)   Based on his allegations and deposition testimony, the short length of time he was housed in behavior control, and the lack of evidence of conditions that deprived Plaintiff of the "minimal civilized measure of life's necessities," the Court finds that Defendants are also entitled to qualified immunity on this issue. Revels v. Vincenz, 382 F.3d at 875.  No reasonable fact finder could find that Plaintiff's allegations support the violation of a constitutional right.

### III.   CONCLUSION

IT IS, THEREFORE, RECOMMENDED that Defendants' Motion for Summary Judgment (Doc. No. 113) be GRANTED, and Plaintiff's Complaint against Defendants be DISMISSED with prejudice.

IT IS SO RECOMMENDED this 13th day of December, 2016.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE